UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
SEP 13 AM 9:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
SEP 13 2000

| | |
|---|---|
| COMMUNITY BANK OF BLOUNTSVILLE, an Alabama banking corporation, | ) ) ) ) |
| Plaintiff, | ) CV-00-PT-1691-M ) |
| vs. | ) ) |
| CARL GREGORY FORD L-M, INC., an Alabama corporation, ET AL., | ) ) |
| Defendants. | |

## MEMORANDUM OPINION

This cause comes to be heard on defendant Gerald Scot Parrish's ("defendant") Motion to Dismiss or in the alternative For More Definite Statement, filed on July 26, 2000.

### FACTS

From September 1997 to November 1998, the defendant was a branch manager at plaintiff Community Bank of Blountsville's ("plaintiff") branch located at the Wal-Mart Supercenter in Fort Payne, Alabama. Part of the defendant's employment responsibilities was to approve or reject loan applications that customers submitted to the plaintiff. On June 20, 2000, the plaintiff filed a complaint against the defendant, a local Ford dealership ("the dealership"), and several of the dealership's employees ("the dealership defendants").

The complaint alleges that the defendant and the other defendants conspired to defraud the plaintiff through the submission and approval of numerous loan applications from customers

1

of the automobile dealership whose applications the plaintiff would otherwise have denied as unqualified for loan approval. The plaintiff claims that the defendant and one of the dealership defendants, defendant Anthony, "conspired and colluded to instruct and counsel [the dealership defendants] to submit numerous false and fraudulent loan applications" to the plaintiff on the customers' behalf. According to the complaint, the automobile dealership defendants then falsified information about certain customers in order for the customers to receive loans to purchase automobiles from the plaintiff. The defendant then allegedly approved the loan applications from the automobile dealership and submitted them to the plaintiff who, relying on the approved applications, lent money to the customers so that they could purchase the automobiles. The plaintiff claims damages for financial institution fraud, wire and mail fraud, and conspiracy to defraud under 18 U.S.C. §§ 1961 *et seq*. (RICO),[1] and under several state causes of action.

The defendant moves for the court to dismiss the plaintiff's RICO claims (Counts I and II of the complaint), the only federal claims in the complaint, for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, the defendant moves for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. If the RICO claims are dismissed, the defendant moves that the RICO conspiracy claim be dismissed as well, for lack of a cause of action for conspiracy independent of the RICO claims. In the event that all of the RICO claims are dismissed, the defendant moves that the state claims also be dismissed for lack of federal jurisdiction.

---

[1] The statutes that the plaintiff uses in conjunction with RICO are 18 U.S.C. §§ 1344 (financial institution fraud), 1341 (mail fraud) and 1343 (wire fraud).

The defendant contends that the RICO claims should be dismissed because the facts are not pled with sufficient particularity as required in Federal Rule of Civil Procedure 9(b). Specifically, the defendant argues that the plaintiff has not clearly identified the time, place, and particular contents of the alleged RICO activity that the defendant personally performed. In addition, the defendant argues that, in its wire fraud and bank fraud complaints, the plaintiff failed to plead that the defendant's actions involved interstate commerce. The court will examine each of the defendant's arguments in turn.

## THE STANDARD FOR RULE 12(b)(6) MOTIONS TO DISMISS

Rule 12(b)(6) tests the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true. United States v. Gaubert, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). All factual allegations are to be construed in the light most favorable to the plaintiff. Brower v. County of Inyo, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). Usually, a complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that will entitle him to relief. In re Johannessen, 76 F.3d 347, 349 (11th Cir. 1996). The Eleventh Circuit's "strict adherence" to this rule has caused the court to hold that "a district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted." Friedlander v. Nims, 755 F.2d 810, 813 (11th Cir. 1985).

In the case of fraud, however, Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud be pled with particularity." Rule 9(b)'s heightened

standard applies to RICO claims. <u>Durham v. Business Mgt. Assocs.</u>, 847 F.2d 1505, 1511 (11th Cir. 1988). While Rule 9(b) requires a RICO plaintiff to plead the circumstances of the alleged fraud with particularity, its application "must not abrogate the concept of notice pleading" found in Federal Rule of Civil Procedure 8. <u>Id.</u> Instead, the purpose of the rule is to enhance the notice provided to defendants by requiring plaintiffs to inform them of the specific fraudulent conduct alleged, and to protect defendants from baseless allegations of fraudulent behavior. <u>Id.</u>

## ARGUMENTS

**Arguments concerning the complaint generally**

As an initial matter, the defendant has proffered several arguments that the plaintiff's complaint is deficient for reasons other than the lack of specificity in its allegations of this particular defendant's conduct. First, the defendant argues that the plaintiff's allegations of wire fraud are improperly pled because the plaintiff did not allege that the wire communications were "interstate," a factor that the defendant asserts is an essential element of wire fraud pursuant to 18 U.S.C. § 1343. The plaintiff argues that it is unnecessary to allege that the communications are "interstate" because a telephone line is intrinsically interstate. According to the plaintiff, the mere use of a telephone line in furtherance of a fraudulent scheme satisfies § 1343 regardless of whether the communication is interstate or intrastate.

In many circuits, in order to recover (or convict) for wire fraud under § 1343, it must be shown that at least part of the communication in furtherance of the fraud crossed state lines. <u>Cofacredit v. Windsor Plumbing Supply Co.</u>, 187 F.3d 229, 243 (2d Cir. 1999)("Purely intrastate communication is beyond [§ 1343]'s reach"); <u>Annulli v. Panikar</u>, 200 F.3d 189, 200 (3d Cir. 1999)("In contrast, the federal wire fraud statute requires interstate use of the wire."); <u>United</u>

4

States v. Darby, 37 F.3d 1059, 1067 (4th Cir. 1994)(". . .the Government was required to prove that [Defendant's] phone call crossed a state line . . . ."); Smith v. Ayres, 845 F.2d 1360, 1366 (5th Cir. 1988)("As several courts have recognized, the statute requires that the wire communication cross state lines."). While the Eleventh Circuit has not used the talismanic language "across state lines," it has stated that "[i]n establishing wire fraud under § 1343, the government must prove a scheme, *use of interstate communications*, and criminal intent to defraud." United States v. Pitt, 717 F.2d 1334, 1335 (11th Cir. 1983)(emphasis added), citing United States v. Jackson, 451 F.2d 281, 283 (5th Cir. 1971). That "interstate communications" means that the actual communication must start in one state and travel to another, instead of merely being transmitted by a facility that *allows* interstate communication, may be inferred from the Pitt court's citation to Jackson. In Jackson, the former Fifth Circuit stated that an intrastate telephone call in furtherance of a fraudulent scheme would not have violated § 1343. 451 F.2d at 284.[2]

The defendant's second argument is that the plaintiff's allegation of mail fraud should be dismissed or made more definite because the complaint neither specifically identifies any documents alleged to have been mailed in furtherance of the scheme, nor alleges the dates that documents were mailed or the specific defendants who mailed them. The plaintiff, in response, argues that the pleading requirements for mail fraud do not require such details in the complaint because the plaintiff need prove only that it is foreseeable that the defendants caused the mails to be used, not that a certain document was actually mailed on a certain date.

---

[2] In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all cases decided by the former Fifth Circuit prior to October, 1981.

The plaintiff has misstated the law. In order to recover for mail fraud under § 1341, a plaintiff must show that the mails were actually used in furtherance of the scheme. Pereira v. United States, 347 U.S. 1, 8, 74 S. Ct. 358, 362-363 (1954)("The elements of the offense of mail fraud . . . are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purposes of executing the scheme.") While the defendant does not always have to drop the letter in the mailbox himself, it must be shown at least that he "caused" a mailing to occur. Id. at 363. Furthermore, the defendant does not even have to *intend* that the mails be used in order to "cause a mailing," as long as he acted either with knowledge that the use of the mails would occur "in the ordinary course of business," or in such a way that he could reasonably foresee that the use of the mails would occur as a result of his actions. Id.; United States v. Georgalis, 631 F.2d 1199, 1206 (5th Cir. 1980). Nevertheless, a mailing must be shown actually to have happened. United States v. Waymer, 55 F.3d 564, 569 (11th Cir. 1995)("Thus, "mailing" is a required element of the crime of mail fraud.").

The complaint does allege that the defendants "mailed or caused to be mailed through the United States Postal Service various documents" in furtherance of the alleged fraudulent scheme.[3] The issue is whether the complaint alleges the mail fraud with sufficient specificity. Federal case law in this area is not exactly a model of clarity.

---

[3] Plaintiff's exact language can be found in two paragraphs of its complaint: "Upon information and belief, for the purposes of executing, aiding or abetting, or attempting to execute their schemes or artifices, [the defendants] used the United States Postal Service and/or telephonic or other electronic means to send, deliver, take or receive documents, and/or to otherwise communicate by wire in furtherance of the RICO scheme." Complaint, para. 62. Elsewhere: "Upon information and belief, for the purposes of executing and furthering their scheme, Defendant Parrish [and the Ford Defendants] mailed or caused to be mailed through the United States Postal Service, various documents in violation of 18 U.S.C. § 1341, and/or transmitted communications by wire using telephonic or other electronic means in violation of 18 U.S.C. § 1343." Complaint, para. 66.

It has been said that the Eleventh Circuit's standard for Rule 9(b) particularity is less stringent than the standards of other circuits, which require date, time, place, and content of false representations and the exact identity of parties. General Cigar Co. v. CR Carriers, Inc., 948 F. Supp. 1030, 1036 (M.D. Ala. 1996). In other circuits, the plaintiff's simply pleading the statutory language would be obviously insufficient. The Second, Seventh, and Ninth Circuits require mail fraud plaintiffs to allege with particularity "the purpose of the mailing within the defendant's fraudulent scheme." McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir. 1992); Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990); Sun Sav. & Loan Assoc. v. Dierdorff, 825 F.2d 187, 196 (9th Cir. 1987). The First Circuit limited a plaintiff's RICO mail fraud cause of action to only those mailings that the plaintiff had specifically described in the complaint, even though the complaint alleged that other mailings in violation of § 1341 had occurred. Fleet Credit Corp. v. Sion, 893 F.2d 441, 444-445 (1st Cir. 1990), citing New England Data Svcs. Inc. v. Becher, 829 F.2d 286, 292 (1st Cir. 1987)(holding that RICO complaint does not satisfy Rule 9(b)'s particularity requirement where "plaintiffs have merely stated conclusory allegations of mail and wire fraud. . . with no description of any time, place, or content of the communication."). In Mortel v. Mortell Co., 887 F.2d 1322, 1324 (7th Cir. 1989), the Seventh Circuit found that the following language was insufficient to allege mail fraud:

> "The named defendants employed the United States Mail in filing reports, conducting negotiations, entering into various agreements, offering and receiving legal advice, as previously stated, so as to conceal their activities and intentions. . . , all in violation of 18 U.S.C. § 1341."

The Tenth Circuit found that a complaint's allegations that the defendant:

7

> "has knowingly sent correspondence and communications through the U.S. mails on more than two occasions with the specific design to assert a false position, known to be false, with the specific intent to compel plaintiff to relieve United of its take-or-pay contract."

were insufficient to allege mail fraud with particularity. <u>Cayman Exploration Corp. v. United Gas Pipeline Co.</u>, 873 F.2d 1357 (10th Cir. 1989). Taken together, all of these cases stand for the proposition that in order to plead mail fraud with sufficient particularity to satisfy Rule 9(b), the plaintiff must at the very least describe what kind of documents or items the defendants allegedly mailed in furtherance of their scheme, and allege what role the mailings played in the scheme.

The Third and Eleventh circuits take a slightly more flexible approach to pleading with particularity. In <u>Seville Industrial Machinery Corporation v. Southmost Machinery Corporation</u>, 742 F.2d 786, 792 (3d Cir. 1984), the Third Circuit reversed the district court's dismissal of the plaintiff's RICO mail and wire fraud action as insufficiently pled. The court found that while the plaintiff did not describe the date, time, and place of the mailings and phone calls, it still satisfied Rule 9(b) "by incorporating into the complaint a list identifying with great specificity the pieces of machinery that were the subject of the alleged fraud." <u>Id.</u> at 791. However, a distinction between <u>Seville</u> and the instant case is that the complaint alleged that the mailings that the defendants caused were mailings of each piece of machinery that earlier had been described with such specificity. <u>Id.</u> at n6. It was also clear from the complaint what role the mailings played in the fraud– the defendants represented to the plaintiff that if the plaintiff mailed the machinery to the defendants, they would resell it and give the plaintiff a share of the profit. <u>Id.</u> The

8

fraudulent scheme allegedly was accomplished by the defendants' obtaining the plaintiff's machinery and not giving the resale profits to the plaintiff. Id. at 788. The mailings that the defendants caused to further the fraud clearly were the mailings of the machines to the defendants. Thus, while the complaint did not include a paragraph that stated: "The defendants, in furtherance of their fraudulent scheme, caused the plaintiff to mail the machinery to them," it was nonetheless clear on the face of the complaint. In the instant case, the complaint is unclear as to what the defendants allegedly mailed or caused to be mailed, and what purpose the mailings served.

The plaintiff has cited Durham in support of its argument that its allegation of the mailings was sufficient. In Durham, the plaintiff's amended complaint read: "Correspondence and other communications concerning the [scheme] took place through means or instrumentalities or interstate commerce, including, without limitation, the mails." 847 F.2d at 1511 n1. The plaintiff also submitted an affidavit, which described the title and date of the first mailing that the plaintiff received from the defendant, and also described several years of continual correspondence between the plaintiff and three specifically named representatives of the defendant. Id. at 1512 n12. Although the paragraph in the plaintiff's complaint in Durham reads much like the paragraph in the plaintiff's complaint in the instant case, the Durham complaint had additional help in the form of the affidavit, which specifically described the time frame and the subject of the mailings. Once again, although the complaint itself did not describe the mailings and their roles in the scheme in detail, it was clear from the complaint and the affidavit the nature of the mailings– a "confidential" investment offering and correspondence about the investment– and the role they played in the alleged fraud– to induce the plaintiff to

invest its money in the alleged "front" for the fraudulent scheme. See Id. at 1507, 1512 n12. The plaintiff's claim in the instant case is unlike that in Durham because the nature and purpose of the alleged mailings can neither be found on the face of the complaint nor be inferred from other specific allegations, and the plaintiff has not submitted a supporting affidavit to elaborate on the mailings.

Finally, the defendant has argued that the complaint does not contain allegations of incidents affecting interstate commerce.[4] The complaint does not need to allege specific instances of incidents that involve interstate commerce, however, since RICO requires only that the operation of the enterprise in general affect interstate commerce. United States v. Stratton, 649 F.2d 1066, 1075 (5th Cir. 1981). Interstate commerce can be affected for RICO purposes either through the enterprise's legitimate activities or its racketeering activities. United States v. Norton, 867 F.2d 1354, 1359 (11th Cir. 1989). Furthermore, the nexus between the enterprise and interstate commerce need not be a strong one. United States v. Beasley, 72 F.3d at 1518, 1526 (11th Cir. 1996)("To satisfy the interstate commerce requirement, only a slight effect on interstate commerce is required."). In Shared Network Technologies v. Taylor, 669 F. Supp. 422, 425 (N.D. Ga. 1987), the court did not require the plaintiff to allege that the enterprise's predicate acts involved interstate commerce, but instead found that RICO plaintiffs "only need allege a minimal nexus of the enterprise to interstate or foreign commerce." citing U.S. v. Rone, 598 F.2d 564, 573 (9th Cir. 1979). The court found the plaintiff's allegation that "[defendant] is an enterprise which engages in or affects interstate commerce" to be sufficient. Id. In Webb v.

---

[4] The plaintiff's specific language is "At all times relevant to this Complaint, this enterprise was engaged in, and its activities affected, interstate commerce." Complaint, para. 40.

10

Primo's, Inc., 706 F. Supp. 863, 869-870 (N.D. Ga. 1988), the court considered the RICO interstate commerce nexus to be such a low hurdle that it concluded that the plaintiff's allegations that the defendant's enterprise affected interstate commerce to be sufficient for RICO purposes, while at the same time finding that the plaintiff had not pled a sufficient interstate commerce nexus for causes of action under other statutes. It is helpful to note that the alleged enterprise was a franchisor whose franchisees were located entirely in one state. Id. at 870. In the instant case, the alleged enterprise centers on the activities of a Ford franchise, a sub-member of a company whose headquarters and franchises are located throughout the nation.

**Arguments concerning the complaint's allegations against Defendant Parrish**

The defendant argues that, in general, the complaint's allegations of his conduct are "conclusory" and do not meet the particularity requirements of Rule 9(b). He asserts that the plaintiff has not sufficiently pled events that give rise to a strong inference of fraudulent activity. Specifically, he argues that the complaint "must state with particularity the time, place, and particular contents of the RICO activity that [the defendant] performed."

The plaintiff urges the court to read Rule 9(b) in conjunction with the broader notice-pleading purpose of Rule 8, citing examples of RICO complaints in other cases whose egregious length earned the plaintiffs a sharp rebuke from the court. The plaintiff argues that the Eleventh Circuit's RICO pleading standard is less exacting than the requirements of other circuits, and has provided citations to cases that acknowledge that means are available to satisfy Rule 9 other than alleging date, time, and place. It argues that in light of the relaxed requirements in those cases, it has provided sufficient detail to overcome the heightened pleading hurdle.

The Eleventh Circuit has recognized other means to plead fraudulent conduct with

11

particularity in addition to the "date, time, and place" method. Durham, 847 F.2d at 1512. The Durham court cited two cases in which such alternative means were used: Seville Industrial Machinery Corporation v. Southmost Machinery Corporation, 742 F.2d 786 (3d Cir. 1984) and Shared Network Technologies, Inc. v. Taylor, 669 F. Supp. 422 (N.D. Ga. 1987). In both cases, the plaintiffs' complaints were found to satisfy Rule 9(b). Seville, 742 F.2d at 791; Shared Network Technologies, 669 F. Supp. at 429.

  In Seville, the plaintiff claimed that the defendants had defrauded it by inducing it to enter into several service contracts involving the sale of numerous pieces of machinery. Seville, 742 F.2d at 788. The defendants promised to re-sell the machinery and remit a share of the proceeds to the plaintiff. Id. When the defendants failed to perform their promises, the plaintiff sued them for fraud, alleging that they had made numerous fraudulent misrepresentations and omissions of material facts in each transaction and that it had relied on those misrepresentations and omissions in shipping the machinery to the defendants. Id. The district court dismissed the plaintiff's complaint because it did not describe the date, place or time of the phone calls and mailings that the defendants allegedly used to further the scheme. Id. at 791.

  Reversing the district court, the Third Circuit explained that "it is certainly true that allegations of "date, place or time" fulfill the [particularity requirement], but nothing in [Rule 9(b)] requires them." Id. The court then found that the plaintiff had satisfied the requirements of Rule 9(b) by "incorporating into the complaint a list identifying with great specificity the pieces of machinery that were the subject of the alleged fraud. . . . The complaint sets forth the nature of the alleged misrepresentations, and while it does not describe the precise words used, each allegation of fraud adequately describes the nature and subject of the alleged misrepresentation."

Id.

In Shared Network Technologies, the plaintiff brought a RICO action against its president. 669 F. Supp. at 423-424. The plaintiff alleged that the president, who also managed the company's day-to-day affairs, caused it to pay $593,500 to a non-existent electronics company based on four invoices. Id. at 424. According to the complaint, the electronics company was merely a mailbox owned by the defendant, who allegedly retrieved the payments and deposited them in a personal account at a nearby bank. Id. The plaintiff claimed that the defendant, with fraudulent intent, misrepresented to it that the invoices should be paid, although he knew that the plaintiff would not receive the equipment or services listed on them. Id.

The defendant, moving to dismiss the RICO counts pursuant to Rule 12(b)(6), argued that the plaintiff did not adequately allege the fraudulent conduct with particularity. Id. at 428. The court disagreed with the defendant, however, and found that the plaintiff's alleging the date and content of the invoices and purchase orders, the date and amount of a check signed by the defendant, and the date of board meetings at which the defendant fraudulently failed to disclose material information regarding the bogus electronics company and his alleged authorization of the payments "ple[d] the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice and to safeguard against spurious charges."

Rule 9(b) serves the purposes of providing notice to defendants of the "precise misconduct" with which they are charged and protecting them against baseless charges of immoral or fraudulent behavior. Seville, 742 F.2d at 791. It is also designed to prevent a plaintiff from using the complaint as a "fishing expedition"-- pleading the elements of fraud in conclusory language with the hopes of finding unknown supporting facts in discovery. Florida

13

College of Osteopathic Medicine, Inc. v. Dean Witter Reynolds, Inc., 982 F. Supp. 862, 867 (M.D. Fla. 1997). The Eleventh Circuit has thus far espoused the idea that, while the "date, place, and time" method will fulfill these purposes, allegations of date, place, and time are not indispensable where other facts are sufficiently pled. Durham, 847 F.2d at 1512. It also has been widely held that where the fraud allegedly was complex, involved numerous transactions, or occurred over a period of time, the requirements of Rule 9(b) are less stringently applied. United States ex rel. Johnson v. Shell Oil Co., 183 F.R.D. 204, 206 (E.D. Tex. 1998); Anthony Distributors, Inc. v. Miller Brewing Co., 904 F. Supp. 1363, 1366 (M.D. Fla. 1995); Fujisawa Pharmaceutical Co. v. Kapoor, 814 F. Supp. 720, 726 (N.D. Ill. 1993); Hirt v. UM Leasing Corp., 614 F. Supp. 1066, 1072 (D. Neb. 1985); In re Cantanella & E.F. Hutton Co. Secies. Litig., 583 F. Supp. 1388, 1397 (E.D. Pa. 1984).

      Keeping in mind that this court is to treat all factual allegations in the complaint as though they are true and to construe them in the light most favorable to the plaintiff, the court now will consider closely the complaint in the instant case. The complaint alleges a scheme in which the defendant, the branch manager of the plaintiff's bank, "repeatedly submitted false and fraudulent loan applications to the plaintiff and/or misrepresented or suppressed material facts in connection with such loan applications for the purpose of securing financing from plaintiff for the purchase of vehicles by customers of defendant Gregory Ford who otherwise would have been denied credit." Complaint, para. 19. The plaintiff claims that the allegedly fraudulent loan applications were approved by the defendant in the course of performing his responsibilities as the plaintiff's branch manager, to approve or reject loan applications. Id., para. 21. The defendant allegedly devised and executed the scheme willfully and knowingly in order to

fraudulently obtain money from the plaintiff. Id., para. 20. Paragraph 24 of the complaint alleges that the defendant and another defendant enlisted the dealership defendants in the scheme, teaching them to falsify or alter information about customers of the Ford dealership on the credit applications. Id., para. 24, 33. The complaint then alleges that the defendant conspired with the other defendants to submit the fraudulent loan applications to the plaintiff. Id., para. 26.

The complaint claims that, in reliance on the falsified/altered material on the loan applications, it made a significant number of "bad and worthless" loans to people to whom it otherwise would have refused financing. Id., para. 33. The plaintiff considers the loans to be "bad and worthless" because they are uncollectible and caused the plaintiff to incur repossession costs. Id., para. 67. The plaintiff claims that the defendant benefitted personally and financially from the allegedly fraudulent activities through the receipt of various types of income, including "kickbacks." Id., para. 27, 58, 64.

The plaintiff claims that the defendant "participated in the submission to the plaintiff of several hundred false and fraudulent loan applications between March, 1998 and October, 1998." Id., para. 34 The plaintiff pleads with specificity sixteen out of the alleged several hundred applications. Id. para. 35 (1)-(16). In each sub-paragraph of paragraph 35, the plaintiff specifically pleads the date of the application (at the very least, the month that it was submitted), the name of the applicant, the dealership defendant who filled out the application, and the pieces of information that were allegedly falsified. Id. Also in each sub-paragraph, the plaintiff specifically includes the defendant's alleged role in the scheme– he allegedly received the fraudulent application and, while he knew or should have known that the information on the application had been falsified, approved the loan anyway. Id.

## CONCLUSION

The court concludes that, in order to sufficiently allege violations based on interstate wire or phone communications, the plaintiff must allege that there were transmissions from one state to another. The court further concludes that in order to sufficiently allege mail fraud violations, the plaintiff must allege that there were actual mailings caused by the defendant which were in furtherance of the alleged fraudulent conduct.

The court further concludes that the plaintiff should allege specific information to support at least two predicate acts. Such allegations should be as reasonably specific as possible. Information as to other alleged acts can be fleshed out during discovery. There should be, however, initially some specific allegations as to the role played by the defendant as to at least the two alleged violations. Allegations should be reasonably specific to the role of each defendant rather than general references.

The defendant's motion to dismiss will be granted. The plaintiff will be given fifteen (15) days to amend its complaint. Of course, any such amendments should be made in good faith after reasonable investigation.

**DONE** and **ORDERED** this 12 day of September, 2000.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE