# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| COMMUNITY BANK OF BLOUNTSVILLE, an Alabama banking corporation, | ) ) ) ) | |
| Plaintiff, | ) | CV-00-PT-1691-M |
| vs. | ) ) ) | |
| CARL GREGORY FORD L-M, INC., an Alabama corporation, et al., | ) ) | |
| Defendants. | | |

## MEMORANDUM OPINION

This cause comes to be heard on defendant Gerald Scot Parrish's ("defendant") Motion to Dismiss filed on October 16, 2000.

## FACTS

In order to conserve both space and time, the court incorporates by reference its statement of the facts from its memorandum opinion in this case of September 12, 2000.

## PROCEDURAL HISTORY

The plaintiff filed its original complaint on June 20, 2000, claiming damages for financial institution fraud, wire and mail fraud, and conspiracy to defraud under 18 U.S.C. §§ 1961 *et seq.* ("RICO"), as well as damages under various state causes of action. On July 26, 2000, defendant Parrish, one of several defendants in this case, filed a "Motion to Dismiss, or in the alternative for a More Definite Statement" pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e). Specifically, the defendant contended that the plaintiff had not pled its RICO claims with

1



sufficient particularity to satisfy Rule 9(b) because it did not clearly identify the time, place, and particular nature and contents of the alleged RICO activity in which the defendant personally participated. The defendant also argued that the plaintiff had not pled that the alleged enterprise's wire and bank fraud activities affected interstate commerce.

In response to the parties' arguments, this court issued a Memorandum Opinion on September 12, 2000, granting the defendant's motion to dismiss. However, the court allowed the plaintiff to amend its complaint, and set forth specific instructions about what the plaintiff should plead in order to comply with Rules 9(b) and 12(b)(6). In order to amend its complaint to state a proper claim under RICO, the plaintiff was to: (1) allege the interstate nature of the wire transmissions upon which the plaintiff based its wire fraud claim; (2) allege with particularity actual mailings that were caused to further the alleged enterprise; (3) allege specific information to support the commission of at least two predicate acts by the alleged RICO enterprise; and (4) allege the specific role played by the defendant (as well as each of the other defendants) in the alleged predicate acts. The plaintiff filed its First Amended Complaint on September 21, 2000. The defendant filed his Motion to Dismiss Plaintiff's Amended Complaint on November 13, 2000.

### THE STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(6)

Rule 12(b)(6) tests the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true. United States v. Gaubert, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). All factual allegations are to be construed in the light most favorable to the plaintiff. Brower v. County of Inyo, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). Usually, a complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim that will entitle him to relief. *In re* Johannessen, 76 F.3d 347, 349 (11th Cir. 1996). The Eleventh Circuit's "strict adherence" to this rule has led the court to hold that "a district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted." Friedlander v. Nims, 755 F.2d 810, 813 (11th Cir. 1985).

In the case of fraud, however, Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud be pled with particularity." Rule 9(b)'s heightened standard applies to RICO claims. Durham v. Business Mgt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988). While Rule 9(b) requires a RICO plaintiff to plead the circumstances of the alleged fraud with particularity, its application "must not abrogate the concept of notice pleading" found in Federal Rule of Civil Procedure 8. Id. Instead, the purpose of the rule is to enhance the notice provided to defendants by requiring plaintiffs to inform them of the specific fraudulent conduct alleged, and to protect defendants from baseless allegations of fraudulent behavior. Id.

## ARGUMENT

In his motion to dismiss, the defendant once again argues that the plaintiff has failed to state a RICO claim upon which relief can be granted because the plaintiff has not pled the necessary allegations with sufficient particularity to satisfy Rule 9(b). The defendant contends that the plaintiff has merely "lump[ed] all the defendants into one group . . . and assert[ed] [that] as a group all committed the RICO fraud activities . . . ." The defendant argues that, furthermore, the specific allegations of fraudulent activity that the plaintiff has pled do not constitute activity in furtherance of the alleged RICO scheme. The court will address the arguments with regard to each claim separately.

3

<u>The defendant's general particularity argument</u>

The defendant first argues that, in general, the amended complaint fails adequately to describe his participation in the alleged RICO enterprise. He renews his argument that he has been lumped together with the other defendants into one group and that, at least with respect to the wire fraud and mail fraud allegations, the plaintiff has not pled that he personally committed acts amounting to wire fraud and mail fraud. The plaintiff argues that its allegations that the defendant was a participant in an enterprise that, as a whole, allegedly committed acts that qualified as wire fraud, mail fraud, and bank fraud in furtherance of an alleged scheme to defraud the plaintiff, are sufficient to hold the defendant liable simply for his participation in the enterprise, even if the defendant personally participated only in the alleged acts of bank fraud. The plaintiff argues that members of a RICO conspiracy do not have to participate personally in every act of the conspiracy; rather, it is their membership and interest in the enterprise that performs the actions that subjects them to liability. The plaintiff cites in support <u>United States v. Norton</u>, 867 F.2d 1354 (11th Cir. 1989). In <u>Norton</u>, the Eleventh Circuit held that, while the defendant did not personally commit the wrongful acts of the conspiracy, he could still be found guilty of participating in the alleged conspiracy because he had 'conspired to commit the substantive RICO offense and was aware that others had done likewise.'" <u>Id.</u> at 1358-1359 (quoting <u>United States v. Pepe</u>, 747 F.2d 632, 660 (11th Cir.1984)).

<u>Wire Fraud</u>

The defendant argues that the amended complaint's RICO wire fraud allegations "do not meet the necessary requirements under 18 U.S.C. § 1343" because the plaintiff still has not pled the existence of a wire transmission that crossed state lines in furtherance of the alleged RICO conspiracy. Although the plaintiff specifically alleged in his amended complaint that the

4

defendants "transmitted sales and income reports and other related financial documents via U.S. mail and telephone facsimile transmission from the offices of Defendant Gregory Ford in Ft. Payne, Alabama, to the office of Defendant Gregory in Columbus, Georgia," and, later, that the defendants "utilized the internet (i.e., interstate phone and/or wire lines) to run credit checks on prospective customers using credit information provided electronically over interstate wires by Equifax Corporation in Atlanta, Georgia . . . .," the defendant argues that these allegations are still insufficient to support a claim of wire fraud. According to the defendant, these alleged interstate wire communications, on their face, do not directly implicate the alleged RICO conspiracy, and the plaintiff has failed to particularly plead a connection between them and the alleged scheme to defraud the plaintiff.

      The defendant suggests that, in order to qualify as acts in furtherance of an alleged RICO conspiracy, the facsimile transmissions and internet credit checks must have been either fraudulent themselves or performed solely for fraudulent purposes. According to the defendant, the transmission of monthly financial documents and the utilization of the internet to perform credit checks, when such activities are regularly done in the normal course of a defendant's business, cannot serve as vehicles for RICO activity unless they are performed for the express purpose of executing or furthering the RICO scheme. The defendant notes that the amended complaint does not assert that any of the alleged monthly financial reports or credit checks were themselves fraudulent, were related to any of the allegedly fraudulent loan applications submitted to the plaintiff, or were submitted to the plaintiff at any time. The defendant maintains that because the alleged RICO scheme involves fraudulent credit loan applications, in order for the plaintiff to state a RICO claim for wire fraud, the complaint must plead the specific way in which the alleged wire transmissions related to the alleged fraudulent loan applications.

The plaintiff argues that the interstate transmission of monthly financial reports and the performance of credit checks that it has pled in its amended complaint qualify as interstate wire transmissions performed in furtherance of the RICO scheme. The plaintiff contends that the interstate transmissions do not have to be fraudulent themselves; instead, it is enough that they further the RICO scheme in some way. In support of the plaintiff's argument that the "furtherance" of the RICO scheme is a lower requirement than the "commission" of the scheme, the plaintiff cites to U.S. v. Lopez, 71 F.3d 954, 961 (1st Cir. 1995). In Lopez, the First Circuit acknowledged that, pursuant to the Supreme Court's holding in Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 362 (1954), the necessary utility of the transmission itself, in order to further the RICO scheme, had to be but "incidental to an essential element" of the scheme. The Lopez court cited to another Supreme Court case, United States v. Lane, 474 U.S. 438, 451-52, 106 S.Ct. 725, 733-34 (1986), in which the Court noted that a mailing that was performed with the intent to merely give a victim a false sense of security could qualify as mail fraud in furtherance of the RICO scheme.[1]

The allegations of interstate wire transmissions that the plaintiff claims that the defendants performed in furtherance of the RICO scheme, partially reproduced, *supra*, are found in paragraphs 41 and 42 of the amended complaint. The complaint does not specifically allege *how* the interstate facsimile transmissions and internet credit checks supposedly furthered the

---

[1] The plaintiff's reliance on Lopez, and, ultimately, Pereria and Lane, may be a bit simplistic, perhaps because Lopez was decided three holdings and several years after the original holding in United States v. Maze, 414 U.S. 395, 403, 94 S.Ct. 645, 650 (1974), in which the court stated that "[t]he subsequent mailings there were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place." (emphasis added). In the instant case, the plaintiff does not, in its complaint, attribute the use of the facsimile machine to transmit sales reports and the use of the internet to perform credit checks to a *design* or *intent* of the defendants to lull the plaintiff into a false sense of security and delay the ultimate discovery of the alleged conspiracy.

6

RICO conspiracy. It claims only that the transmissions occurred "during the relevant time period" and that they occurred "in furtherance of the fraudulent activities of the RICO enterprise and conspiracy." Although the plaintiff argues that it is sufficient for RICO purposes if the sole purpose of the interstate transmissions was to "lull the victims into a false sense of security," the plaintiff does not plead in the amended complaint that the creation of a false sense of security was the motive behind the credit checks and sales report transmissions. Instead, the plaintiff argues in its brief in opposition to dismissal that the transmissions of the sales reports, which "reflected" the profits of the scheme, and the performance of credit checks on high-risk customers were intended to bolster the appearance that the loans were legitimate.

Mail Fraud

The defendant makes the same argument with respect to the plaintiff's mail fraud claim that he made with respect to the plaintiff's wire fraud claim: that the amended complaint does not plead the alleged specific acts of mail fraud with sufficient particularity. Specifically, the defendant argues that the amended complaint does not contain sufficiently particular allegations of how the acts alleged in the complaint furthered the alleged conspiracy. The defendant contends that the alleged mailings occurred in the normal course of the dealership defendant's business and that the amended complaint does not plead a connection between them and the alleged fraudulent loan applications.

In the amended complaint, the plaintiff claims that the defendants committed mail fraud by mailing to non-creditworthy customers marketing advertisements that offered to sell their vehicles "with no downpayment." The plaintiff alleges in paragraph 43 of the amended complaint that the advertisements were "conceived and/or ratified by [the dealership defendants] with the intent of luring uncreditworthy customers to [the dealership defendant] . . . knowing that

7

such customers could obtain financing from [the defendant] in furtherance of the fraud . . . ." The plaintiff also alleges in paragraph 41 that the defendants mailed income reports and financial documents in furtherance of the fraudulent activity. The plaintiff argues that it has pled a sufficient connection between the allegedly fraudulent activity and the alleged mailings. According to the plaintiff, the connection between the alleged fraudulent activity and the alleged mailings of the income statements and other financial documents is that those "documents incorporated and reflected the unlawful fruits of the enterprise that the [dealership defendant] received from the illegal activity at issue in this lawsuit."

The plaintiff argues that its allegations of mail fraud now fit those in Durham v. Business Management Associates, 847 F.2d 1505 (11th Cir. 1988), which this court, in its prior memorandum opinion, distinguished from the plaintiff's case. The court found that the complaint in Durham could be distinguished from the plaintiff's original complaint because the nature and purpose of the alleged mailings were not clear on the face of the complaint, and because the plaintiff, unlike the plaintiff in Durham, had not submitted a clarifying affidavit. The plaintiff also notes that it has incorporated the specific allegation of "enticing advertisements" into its seventeen specifically-pled allegations of bank fraud, and claims that by doing so, it has surpassed Durham's example of properly pled mail fraud. According to the plaintiff, it is obvious that, by advertising the sale of vehicles with no downpayment, the defendants intended to "lure low-income or otherwise non-creditworthy customers to [the dealership defendant]."

The defendant maintains that case law supports his position that "general advertisements to the general public . . . . does not constitute predicat[e] acts or conduct in furtherance of the RICO scheme." Specifically, the defendant claims that his position is supported by Efron v.

Embassy Suites, 47 F. Supp. 2d 200, 205-206 (D. Puerto Rico 1999), in which the district court found that the mailing of letters regarding complimentary dining cards did not constitute activity in furtherance of the alleged scheme to defraud money. In Efron, the plaintiff claimed that the defendants had mailed certain letters in furtherance of an alleged scheme to defraud him of money and of his interest in a limited partnership in which he had invested. 47 F. Supp. 2d at 205. The court found that some of the mailings were not indictable under 18 U.S.C. § 1341 and thus could not be considered to be predicate acts. Id. Specifically, the court concluded that because a letter that the plaintiff argued "demonstrated the defendants' self-interest" did not serve to further the alleged scheme of depriving the plaintiff of money, it could not be considered to be a predicate act. Id. at 205-206. The court also found that allegations of mailings that the plaintiff claimed were "an attempt to divert attention from the defendant's misconduct" were too general to constitute allegations of acts to further the alleged scheme. Id. at 206.

   Finally, the defendant suggests that the allegations can be predicate acts only if they are indictable themselves under the respective criminal statutes. The defendant points to the Eleventh Circuit's holding in Langford v. Rite Aid, __ F.3d __ , 2000 WL 1643904, *2 (11th Cir. 2000), in which, the defendant argues, the court stated that RICO plaintiffs must establish that the use of the mail or wire is for the purpose of executing the scheme. The defendant maintains that the use of the mails or interstate wires cannot be performed for the purpose of executing the RICO conspiracy unless they are themselves fraudulent in nature. The defendant argues that, for this very reason, Durham, in which the transactions in the alleged investment scheme were solicited and accomplished through the mail, is still distinguishable from this case. The plaintiff cannot avail itself of Durham, the defendant contends, because it has failed to

allege that any fraudulent statements, documents, or materials were transmitted by interstate wire or sent through the mail.

Bank Fraud

The defendant argues that the amended complaint's allegations of bank fraud are still deficient because, at the most, the plaintiff can claim only that the defendant performed his job negligently. The defendant contends that the plaintiff "has failed to show the requisite elements" of bank fraud, specifically, that the defendant received income from the alleged racketeering activity, and that the defendant acquired an interest in an enterprise whose activities affected interstate commerce. The defendant asserts that the amended complaint is still fatally deficient because it did not particularly plead the means by which the defendant received his share in the alleged ill-gotten gain or the extent of the defendant's interest in the enterprise's inventory and operations.[2] Finally, the defendant claims that the amended complaint is still improperly pled because it does not plead the existence of the enterprise or his specific role in the enterprise apart from the alleged racketeering acts.

The plaintiff maintains that its action, by its very nature, states a claim of bank fraud, and that its amended complaint clearly pleads that the defendant knowingly participated in the alleged scheme. The plaintiff notes that it has alleged seventeen specific instances of the alleged RICO enterprise's committing bank fraud, and has included within those allegations a detailed description of the defendant's role in the alleged bank fraud activities and of the ways he profited from the alleged activity. The plaintiff argues that, at this point in the litigation, it does

---

[2] The defendant's motion to dismiss reads as follows: "The Plaintiff's Complaint did not provide with any particularity or by any means the transfer of funds or monies to the Defendant, any interest in the vehicles involved, interest in the dealership involved, its inventory or any financial accounts in the name of the Defendant that received funds from the other Defendants or the alleged enterprise."

10

not have to provide specific documentation of its allegations, but that the court's consideration of the motion to dismiss the complaint must be conducted while accepting all of the complaint's allegations as true. The plaintiff further argues that it has alleged that the enterprise existed apart from its predicate acts in paragraph 55 of the amended complaint, which states that "[t]he association-in-fact enterprise had an ascertainable structure and organization with its own hierarchy of decision-making. This association-in-fact enterprise existed apart from its predicate acts."

RICO Conspiracy

The defendant renews his argument that, in the event that this court should dismiss the allegations of wire fraud, mail fraud, and bank fraud, it should dismiss the plaintiff's claim of RICO conspiracy as well. According to the defendant, no independent cause of action for RICO conspiracy can exist after the underlying allegations of predicate acts are dismissed.

Supplemental State Claims

The defendant also renews his argument that, in the event that this court grants his motion to dismiss the plaintiff's federal RICO claims, the court should dismiss the remaining state law claims for lack of subject matter jurisdiction.

Opportunity to Cure

The plaintiff argues that, should this court find that the amended complaint is still deficient, it should be given another opportunity to cure the deficiency. The defendant responds by arguing that the amended complaint was a far-reaching attempt that was not made in good faith, and that the court should not only dismiss the case but also award the defendant attorney's fees, costs, and other just and proper relief.

ANALYSIS

11

Stating a claim under civil RICO

In order to state a claim under civil RICO, a plaintiff must allege, first, "a 'pattern' of racketeering activity, [which] is shown when a racketeer commits at least two distinct but related predicate acts." Pelletier v. Zweifel, 921 F.2d 1465, 1496 (11th Cir. 1991). The predicate acts are related "if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 1496-1497. The predicate acts must have injured the plaintiff. In Pelletier, the Eleventh Circuit stated that "a plaintiff cannot allege merely that an act of racketeering occurred and that he lost money. He must show a causal connection between his injury and a predicate act. If no injury flowed from a particular predicate act, no recovery lies for the commission of that act." Id. Furthermore, the predicate act from which the plaintiff alleges that he was injured must have directly caused the plaintiff's injury. Id. at 1499 (emphasis added).

Mail fraud and wire fraud

The Pelletier court expounded upon the elements of mail and wire fraud, which it found to be substantially identical: "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." (quoting United States v. Downs, 870 F.2d 613, 615 (11th Cir. 1989)). The court suggested that the nature of the transmissions or mailings must have some sort of fraudulent or otherwise nefarious quality, stating "the court uses a reasonable person test to determine whether, if the scheme had been executed, the intended victim would have acted on the misrepresentations: were the misrepresentations 'reasonably calculated to deceive persons of ordinary prudence and comprehension.'" Id. at 1499 (quoting United States v. Bruce, 488 F.2d 1224, 1229 (5th Cir. 1973)). The court does not look at the defendant's actions "in the abstract;

12

as the words 'deceit' and 'scheme' imply, the [plaintiff] must show, not only that the defendant's actions would have deceived a reasonably prudent person, but also that the defendant had <u>the requisite mens rea</u>. . . . 'a conscious knowing intent to defraud.'" <u>Id.</u> Moreover, "this mens rea element dictates, in practice, that the perpetrator of the scheme anticipate reliance. . . . Mail and wire fraud, just like common law fraud, thus entail '[a]n intention t<u>o induce the [victim] to act or to refrain from action in reliance upon the misrepresentation</u>." <u>Id.</u> Again, "a plaintiff only can show a scheme to defraud if he proves that some type of deceptive conduct occurred." <u>Id.</u> at 1500. These statements imply that a mail/wire fraud plaintiff must show that the defendant transmitted material containing misrepresentations-- untruths, half-truths or omissions, perhaps-- with the intent to induce the recipient of the transmissions to rely upon them and to act or not to act. It is difficult to conceive of how a defendant can transmit or mail fraudulent misrepresentations with the intent that a non-recipient rely upon them.

    The <u>Pelletier</u> court then discussed the injury issue. A civil RICO plaintiff, unlike the government in a criminal RICO case, must show that he actually "was injured by reason of the defendant's acts of deception." <u>Id.</u> at 1499. Stated differently, the plaintiff must show that it somehow, to its determent, relied directly upon the mailings and wire transmissions allegedly sent by the defendant. O'Malley v. O'Neill, 887 F.2d 1557, 1563 (11th Cir. 1989). This requirement implicates the plaintiff's standing to sue for the alleged mail and wire fraud: "As the Supreme Court stated in <u>Sedima</u>, 'the <u>plaintiff only has standing if</u>, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.'" (emphasis added) (quoting Sedima, S.P.R.L. v. Imrex Co., 472 U.S. 479, 496, 105 S. Ct. 3275, 3285 (1985)). To show injury, a plaintiff must show that "he [was] the target of the scheme to defraud and . . . relied to his determent on the misrepresentations in furtherance of that

13

scheme." Id. at 1499-1500. The Eleventh Circuit, taking a strict view of RICO causation, has held that "a plaintiff has standing to sue under § 1964(c) only if his injury flowed directly from the commission of the predicate acts.[3]

It appears as though the plaintiff in this case is suing the defendants primarily for an alleged bank fraud scheme, but is attempting to bring a claim for mail/wire fraud by arguing that because the alleged enterprise incidentally used the mail/interstate wires during the time period in which it allegedly was committing a scheme of bank fraud, regardless of whether the material that it allegedly transmitted contained misrepresentations upon which the enterprise intended for the recipients to rely, the plaintiff can recover for wire/mail fraud as additional fraudulent acts. However, the alleged bank fraud and the alleged incidental wire/mail fraud are separate and only the alleged bank fraud could have caused injury to the plaintiff. Therefore, a plaintiff cannot claim that, simply because the alleged enterprise used the mail/interstate wires to further a bank fraud scheme, a cause of action automatically exists for mail/wire fraud.

If the plaintiff cannot prove (and does not even allege) that it was the direct victim of deceptive conduct through which it received, either over interstate wires or through the mail, misrepresentations of fact that were transmitted with the intent that the plaintiff should rely upon them when deciding to act or not to act, it does not have standing to sue for mail/wire fraud, <u>even if it can show the defendants transmitted fraudulent misrepresentations to someone else</u>. In Johnson Enterprises, the Eleventh Circuit held that a plaintiff did not have standing to sue for mail/wire fraud where the alleged fraudulent misrepresentations were made to another entity.

---

[3] A private plaintiff is able to bring a cause of action under RICO by virtue of 18 U.S.C. § 1964(c). Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1317. A private plaintiff can bring an action under civil RICO through § 1964(c) for one or more of the four RICO violations listed in § 1962(a)-(d).

162 F.3d at 1318 ("Because the misrepresentations the defendants are said to have made were directed to the franchising authorities, not JEJ, JEJ lacks standing under section 1964(c) to prosecute a claim based on such misrepresentations."). Again, in O'Malley, the court held that the plaintiffs could not recover for mail fraud where the plaintiffs "[did] not allege that they, in any way, relied upon the false reports sent to the government or upon the distorted financial statements . . . . The victims of the mail fraud, if there were any, were the federal government and the creditors of St. Thomas, and the American Bar association." 887 F.2d at 1563.

In its amended complaint, all of the plaintiff's allegations of wire/mail fraud show the allegedly fraudulent transmissions going to an entity other than the plaintiff. In paragraph 41, the plaintiff alleges that the defendants "transmitted sales and income reports and other related financial documents via U.S. mail and telephone facsimile from the offices of Defendant Gregory Ford in Ft. Payne, Alabama, to the office of Defendant Gregory in Columbus, Georgia." In paragraph 42, the plaintiff alleges that the defendants "utilized the internet to run credit checks on prospective customers using credit information provided electronicaly over interstate wires by Equifax Corporation in Atlanta, Georgia, Trans Union in Chester, Pennsylvania, and/or Experian Corporation . . . in Orange, California and Atlanta, Georgia." Paragraph 43 alleges that the defendants sent the "no downpayment" advertisements "to prospective customers." These three paragraphs encompass the plaintiff's allegations of wire and mail fraud. The plaintiff not only fails to allege that it received these communications, but also fails to allege that they contained any misrepresentations of fact upon which the defendants intended the recipients to rely. In one of the allegations, the internet-generated credit checks, the information allegedly is being sent to the defendants. Pursuant to Johnson Enterprises and O'Malley, even if the plaintiff had alleged and could show that the financial documents and advertisements contained fraudulent

15

misrepresentations and were transmitted with the necessary mens rea, the plaintiff still does not have standing to sue for wire and mail fraud because none of the documents allegedly were transmitted to the plaintiff or relied upon by the plaintiff.

Financial institution fraud

Although a plaintiff must allege at least two predicate acts, a plaintiff may allege that these predicate acts occurred in violation of the same statute. As already stated, to recover damages under civil RICO, the plaintiff in this case must show that the defendant engaged in a pattern of "racketeering activity." 18 U.S.C. § 1962(c). In Sedima, the Supreme Court defined "racketeering activity" as "any act . . . 'indictable' under numerous specific federal criminal provisions . . . ." 473 U.S. at 481-482. One of those provisions is "financial institution fraud," found at 18 U.S.C. § 1344. 18 U.S.C. § 1961(1)(B). In order to prove a "pattern" of racketeering activity, a plaintiff must prove that the defendant committed two or more of these indictable acts, also called "predicate acts." While a plaintiff must prove that the defendant committed "distinct but related predicate acts," Pelletier, 921 F.2d at 1496, the acts, in order to be distinct, do not have to violate two distinct federal statutes. For example, in O'Malley, the plaintiffs brought a RICO claim solely for mail fraud. 887 F.2d at 1558. In United States v. Goldin Industries, 219 F.3d 1271, 1273 (11th Cir. 2000), the alleged predicate acts again consisted only of mail fraud. Therefore, whether this plaintiff's mail/wire fraud claims are dismissed does not affect its ability to allege a sufficient number of predicate acts indictable under the financial institution fraud statute to state a claim under RICO.

The plaintiff brings its claim of RICO financial institution fraud pursuant to 18 U.S.C. § 1344. That section reads:

Whoever knowingly executes, or attempts to execute, a scheme or artifice--

16

> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. The plaintiff, in its amended complaint, alleges that the defendants used "one or more schemes or artifices to defraud or to obtain money or property of the Plaintiff by means of false or fraudulent pretenses . . . ."

In order to recover, the plaintiff must show that the defendants (1) knowingly (2) executed or attempted to execute (3) a scheme or artifice (4) to defraud the plaintiff. "Scheme" and "artifice" "include any plan or pattern of conduct including false and fraudulent pretenses and representations." United States v. Swearingen, 858 F.2d 1555, 1557 (11th Cir. 1988). An additional element of bank fraud requires the plaintiff to prove that the bank was a federally-insured financial institution. United States v. Key, 76 F.3d 350, 353 (11th Cir. 1996).[4] Unlike the mail and wire fraud statutes, which punish certain acts "in furtherance" of a fraudulent scheme, the bank fraud statute "punishes the execution of the scheme." United States v. Adkinson, 158 F.3d 1147, 1159 (11th Cir. 1998)(citing United States v. Lemons, 941 F.2d 309, 318 (5th Cir. 1991)). A scheme is executed by the movement of money, funds or other assets from the institution. Id. (citing United States v. Mancuso, 42 F.3d 836, 847 (4th Cir.1994)). "[T]his movement of the money from the financial institution completes the execution of the scheme." Id. (citing United States v. Christo, 129 F.3d 578, 580 (11th Cir.1997)).

---

[4] In Key, a case in which the plaintiff brought an action for bank fraud without the use of RICO, the Eleventh Circuit also stated that proof of federal insurance was a "jurisdictional prerequisite." 76 F.3d at 353. In this case, however, the plaintiff brings its claim for bank fraud through another federal statute, RICO, upon which it bases its federal jurisdiction. The question of whether this court would still have jurisdiction over the plaintiff's bank fraud claim if the bank in question were not federally insured is moot, however, because proof of being federally insured is an element of bank fraud.

The complaint states that the scheme involved the "repeated submission of false and fraudulent loan applications to Plaintiff . . . for the purpose of securing financing from Plaintiff for the purchase of vehicles by customers of [the dealership defendant] who otherwise would have been denied credit." Amended complaint, para. 18. Under the Eleventh Circuit's interpretation of the execution of the scheme, each time the plaintiff moved funds from its institution, the scheme would be completely executed. The amended complaint specifically pleads seventeen alleged acts of financial institution fraud. In each of these seventeen allegations, the plaintiff states that, in reliance upon certain specific misrepresentations allegedly invented and recorded with fraudulent intent by the dealership defendants and then submitted to the plaintiff with fraudulent intent by the defendant, it extended the requested loan to the consumer and provided the financing for the vehicle. To the extent that "granting financing" and "approving a loan" alleges disbursing funds on behalf of a consumer, the complaint alleges seventeen completed executions of the alleged scheme.

As discussed above, in order for a plaintiff to bring an action under civil RICO, the plaintiff must allege the existence of a RICO enterprise and a pattern of racketeering activity consisting of at least two predicate acts. The amended complaint has alleged seventeen separate executions of the alleged RICO bank fraud, which, under the stricter "execution-instead-of-act-in-furtherance" standard of bank fraud, constitute the predicate acts of the alleged bank fraud scheme.

## CONCLUSION

The court concludes that the plaintiff has not appropriately alleged a RICO action based on mail and/or wire fraud, but that it has done so based upon financial institution fraud. The court will strike the mail and wire fraud claims but will otherwise deny the defendant's motion.

18

This 1st day of December 2000

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE